UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL D.,[1]

        Plaintiff,

      v.                      **Case No. 2:20-cv-12309**
                                     **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

        Defendant.

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

# I.

On July 20, 2015, Plaintiff filed his application for benefits, alleging that he has been disabled since October 16, 2013, due to issues with his right leg, blood clots, a blood disorder, and lungs. R. 134, 279−82, 331. The application was denied initially and upon reconsideration. R. 161−69, 169−71. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 172. Administrative Law Judge ("ALJ") Douglass Alvarado held a hearing on January 16, 2018 ("the first hearing"), at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36−74. In a decision dated March 20, 2018 ("the first decision"), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 16, 2013, Plaintiff's alleged disability onset date, through January 1, 2017, the date on which Plaintiff returned to substantial gainful work activity. R. 138−48. On February 5, 2019, the Appeals Council vacated the first decision and remanded the case to the ALJ for resolution of the following issues:

> The hearing decision finds, findings 3 and 5, that from October 16, 2013 to January 1, 2017, the claimant had severe degenerative disc disease, deep vein thrombosis, pulmonary embolism, right wrist derangement, headaches, chronic fatigue syndrome, and obesity resulting in a residual functional capacity to perform light work except he: could stand and walk for four hours; was able to stand and stretch at the workstation after 30 minutes of sitting; and was able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking. He could occasionally climb ramps and stairs; could never climb ladders, ropes and scaffolds; could occasionally balance, stoop, kneel, crouch and crawl; and could never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle. The hearing decision further finds, finding 10, that the claimant is able to perform the light jobs of Labeler, Dictionary of Occupational Titles Number (DOT) 920.687-126, Garment folder DOT 789.687-066 and Ticket tagger DOT 652.685-094 and that Medical-Vocational Rule 202.21 directs a finding that the claimant is not disabled.
>
> However, a range of light work requires that an individual have the residual functional capacity to stand and walk for at least 6 hours in an 8-hour workday. In contrast, a range of sedentary work requires that an individual be able to stand and walk for only 2 hours in an 8-hour workday. The major difference between

sedentary and light work is that most light jobs, particularly those at the unskilled level of complexity, require a person to be standing or walk most of the workday (Social Security Ruling 83-14).

In this case, the hearing decision finds that the claimant has the residual functional capacity to stand and walk for four hours, stand and stretch at the workstation after 30 minutes of sitting and able to sit for 1-5 minutes at the workstation after 30 minutes of standing or walking. Therefore, application of the light Medical-Vocational Rule 202.21 is inconsistent with the established sedentary residual functional capacity.

In addition, the hearing decision includes no resulting manipulative limitations of the claimant's severe right wrist derangement in the articulation of the claimant's residual functional capacity or explanation as to why the claimant was found not to have such limitations. Further, the light jobs cited by the vocational expert require frequent, constant and occasional handling and fingering.

Moreover, the hearing decision indicates that the State agency medical consultants in Exhibits 1A and 3A found the claimant capable of performing a residual functional capacity of light work. However, both medical consultants found the claimant not disabled under the sedentary Medical-Vocational Rule 201.27.

Accordingly, the Appeals Council finds that further consideration and evaluation of the claimant's impairments and functional limitations is warranted to determine the extent, if any, the claimant was capable of performing jobs in the national economy from October 16, 2013 to January 1, 2017.

R. 154–55. The Appeals Council further directed that, upon remand, the ALJ would do the

following:

- Give further consideration to the nontreating source opinions of the State agency medical consultants in Exhibits 1A and 3A, pursuant to the provisions of (20 CFR 404.1527), and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b).

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating sources

3

to provide additional evidence and/or further clarification of the opinions and medical source statement about what the claimant could still do despite the impairments through January 1, 2017 (20 CFR 404.1520b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 155–56. The Appeals Council therefore also directed that, in compliance with the above, the ALJ would offer Plaintiff "an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." R. 156.

Upon remand, the ALJ held a second hearing on June 28, 2019, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 76–109. In a decision dated August 22, 2019, ("the second decision"), the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 16, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 10–24. That second decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on July 1, 2020. R. 1–6.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 25, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge

4

pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[3] On that same day, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

## II.

In addition to challenging the substance of the ALJ's second decision, Plaintiff argues that, because the particular ALJ who adjudicated her claim had not been properly appointed under the Appointments Clause of the United States Constitution at the time of the first hearing and the first decision, this case must be remanded to the Social Security Administration ("SSA") for a new hearing before a different ALJ pursuant to *Lucia v S.E.C.*, -- U.S. --, 138 S. Ct. 2044 (2018). *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 15−18; *Plaintiff's Reply Brief*, ECF No. 20, pp. 1−7. This Court agrees.

By way of background, in *Lucia*, the United States Supreme Court held that the administrative law judges with the Securities and Exchange Commission are "Officers of the United States" subject to the Constitution's Appointments Clause, which provides that only the President, "Courts of Law," or "Heads of Departments" can appoint "Officers." *Lucia*, 138 S. Ct. at 2050, 2053−54. *Lucia* also found that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id*. at 2055 (citation and internal quotation marks omitted). "[T]he 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id*. (citations omitted). The Court in *Lucia* went on to clarify that that official cannot be the same official "even if he [or she] has by now received (or receives sometime in the future) a

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

constitutional appointment[,]" reasoning that, if that official has already both heard the "case and issued an initial decision on the merits[,]" he or she "cannot be expected to consider the matter as though he [or she] had not adjudicated it before. To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which [the claimant] is entitled." *Id.*

"In response to *Lucia* and in light of an executive order concluding that 'at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause,' Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018)," the Acting Commissioner of Social Security reappointed the agency's administrative law judges, including the ALJs and the Administrative Appeals Judges of the SSA's Appeals Council. *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020).

Thereafter, the Commissioner issued SSR 19-1p, which provided the procedure for a timely Appointments Clause challenge:

> When the Appeals Council grants review based on a timely-raised Appointments Clause challenge, [Administrative Appeals Judges] who have been appointed by the Acting Commissioner (or whose appointments the Acting Commissioner has ratified) will vacate the hearing decision or dismissal. In cases in which the [unconstitutionally appointed] ALJ made a decision, the Appeals Council will conduct a new and independent review of the claims file and either remand the case *to an ALJ other than the ALJ who issued the decision under review*, or issue its own new decision about the claim covering the period before the date of the ALJ's decision. In its review, the Appeals Council will not presume that the prior hearing decision was correct.
>
> In cases in which the ALJ dismissed a request for a hearing, the Appeals Council will vacate the ALJ's dismissal order. It will then either: (1) Decide whether the request for a hearing should be dismissed, or (2) remand the case *to another ALJ* to determine that issue.

SSR 19-1p, 2019 WL 1324866, *3 (Mar. 15, 2019) (emphasis added).

The Supreme Court, in a subsequent review of the issue, held that "claimants are not required to exhaust certain issues in administrative proceedings to preserve them for judicial

review" and that claimants who raise an Appointments Clause challenge "for the first time in federal court are not untimely in doing so." *Carr v. Saul*, -- U.S. --, 141 S. Ct. 1352, 1362 (2021).

In the case presently before this Court, Plaintiff represents that the ALJ who considered Plaintiff's claim was unconstitutionally appointed at the time that he conducted the first hearing on January 16, 2018, and when he issued the first decision on March 20, 2018. *Plaintiff's Memorandum of Law*, ECF No. 18, p. 16. Although Plaintiff acknowledges that the ALJ was later properly appointed on July 16, 2018—and therefore had been properly appointed at the time he conducted the second hearing on June 28, 2019, and when he issued the second decision on August 22, 2019—Plaintiff argues that this subsequent appointment did not cure the problem cause by the original defective appointment. *Id.* at 16–17. According to Plaintiff, the ALJ "cannot be expected to consider the matter as though he had not adjudicated it before[,]" *Lucia*, 138 S.Ct. at 2055, particularly where, as here, the ALJ stated at the second hearing that "we took extensive testimony last time. I don't think there's any need to go back over it. It's part of my record today[,]" R. 82–83. *Plaintiff's Memorandum of Law*, ECF No. 18, pp. 16–17. Plaintiff insists that the only appropriate remedy is to remand for a new hearing before a different, constitutionally appointed, ALJ. *Id.* at 17–18 (citing, *inter alia*, *Lucia*, 138 S.Ct. at 2055).

The Acting Commissioner disagrees, arguing that neither *Lucia* nor *Carr* provides a basis for remanding this case because it is only the second decision, which was issued by a properly appointed ALJ, that is before this Court for review. *Defendant's Brief Pursuant to Local Rule 9.1*, ECF No. 19, pp. 9–10. Unlike the ALJ in *Lucia*, the Acting Commissioner argues, the ALJ who presided over the decision currently under review by this Court, *i.e.*, the second decision, had been properly appointed. Moreover, the Acting Commissioner argues, the facts of this case are different from those in *Carr,* where claims were heard by ALJs whose appointments had not

7

been ratified by the Acting Commissioner; the Acting Commissioner objects to Plaintiff's effort in this case to base his Appointments Clause challenge on the first decision—a decision that the Appeals Council has already vacated and which is not subject to review in this proceeding. *Id*. at 10 (citing, *inter alia*, *Govachini v. Comm'r of Soc. Sec.*, No. 19-1433, 2020 WL 5653339, at *1 n.1 (W.D. Pa. Sept. 23, 2020) (rejecting an Appointments Clause claim based on a prior decision that was not the subject of review by the court, even when the same ALJ had heard the claim anew following judicial remand). The Acting Commissioner goes on to argue that "*Lucia* does not say that any time an ALJ was involved in a matter prior to ratification, that ALJ is forever barred from participating later. Rather, in order to create an 'incentive[] to raise Appointments Clause challenges,' *Lucia* determined that a 'successful litigant' should be rewarded with 'a hearing before a new judge.'" *Id*. at 10−11 (quoting *Lucia*, 138 S. Ct. at 2055 n.5). The Acting Commissioner therefore takes the position that "[n]othing in *Carr* or *Lucia* suggests that an Appointments Clause challenge may survive longer than the decision rendered by the improperly appointed ALJ. Plaintiff has already received a hearing and decision from a properly-appointed ALJ and is entitled to no further relief under the Appointments Clause." *Id*. at 11.

In reply, Plaintiff insists that, "having heard Plaintiff's claim once before, the appointments clause defect continued." *Plaintiff's Reply Brief*, ECF No. 20, p. 2. Plaintiff distinguishes *Govachini* from this case, noting that *Govachini* "was decided prior to *Carr*, and appears to be only argued in passing, with the Court noting 'the possible application' of such in a footnote." *Id*. Plaintiff then relies on the reasoning in other cases, including a case from a district court in this circuit, that reject the Acting Commissioner's reasoning that remand is not required where the ALJ had been properly appointed at the time of the hearing and decision that are the subject of the action before this Court, but not constitutionally appointed at the time of an earlier

hearing and/or decision. *Id.* at 2–4 (citing *Evanitus v. Kijakazi*, No. 1:20-CV-1187, 2021 WL 5494282, at *1 (M.D. Pa. Nov. 23, 2021) (collecting cases from district courts within the Third Circuit supporting the proposition that the proper remedy under these circumstances is to remand to a different ALJ for a new hearing, including, *Denicola v. Comm'r of Soc. Sec.*, 2021 WL 735853 (M.D. Pa. Feb. 25, 2021) (remanding for a hearing in front of a new ALJ, reasoning that "the remedy afforded in *Lucia*—rehearing before a new ALJ— suggests that if an improperly appointed ALJ presides over an SSA claimant's hearing, an Appointments Clause violation has occurred, regardless of whether the ALJ is properly appointed before issuing a final decision."); *Brown v. Saul*, 2020 WL 6566221, at *4 (W.D. Pa. Nov. 9, 2020) (remanding for rehearing before a new ALJ and holding that after-the-fact ratification of ALJs is "not consistent with what the Administration said it would do in SSR 19-1p" and "inconsistent with the holding in *Lucia*"); *Morris v. Comm'r of Soc. Sec.*, 2020 WL 3104931, at *1-2 (W.D. Pa. June 11, 2020) (remanding for rehearing before a new ALJ because the ALJ who decided the case "was not constitutionally appointed for the entirety of the relevant time period"); *Bullard v. Saul*, 2020 WL 2615651, at *1 (E.D. Pa. May 22, 2020) ("[E]ven though Bullard's third administrative hearing took place after the ALJ was constitutionally appointed, her consideration of Bullard's claim . . . was improper")); *Welch v. Comm'r of Soc. Sec.*, No. 2:20-CV-1795, 2021 WL 1884062, at *1 (S.D. Ohio May 11, 2021) ("[W]hile the Commissioner appears to be determined not to acknowledge ALJ Hartranft's involvement in Plaintiff's claim before 2019, the Court cannot deny this reality. Because ALJ Hartranft initially heard and ruled on Plaintiff's claim, he could not then un-ring that bell and 'be expected to consider the matter as though he had not adjudicated it before.'") (quoting *Lucia*, 138 S.Ct. at 2055), *report and recommendation adopted*, No. 2:20-CV-1795, 2021 WL 2142805 (S.D. Ohio May 26, 2021)). Plaintiff therefore contends that the Acting

9

Commissioner's argument that the constitutional defect in this case had been cured by the time the ALJ held a second hearing and issued a second decision is contrary to the Acting Commissioner's own SSR and *Lucia*. *Id*. at 6−7.

Plaintiff's arguments are well taken. The United States Court of Appeals for the Third Circuit has not addressed this precise issue and, as the parties' arguments highlight, district courts−including district courts within this circuit−are divided on this issue. *Compare*, *e.g.*, *Page v. Comm'r of Soc. Sec.*, No. 6:21-CV-258-LHP, 2022 WL 1619168, at *8 (M.D. Fla. May 23, 2022) ("Given that the decision by ALJ Levin was issued on October 21, 2020 and relates to a hearing held on October 1, 2020, Claimant's Appointments Clause challenge is unavailing because ALJ Levin was constitutionally appointed during all relevant aspects of the decision under review."); *Figueroa v. Comm'r of Soc. Sec.,* No. CV 20-346-E, 2022 WL 721283, at *1 n.2 (W.D. Pa. Mar. 10, 2022) (noting that "[t]he remedy in *Lucia* was prompted to incentivize litigants to raise Appointments Clause challenges" "'by providing a successful litigant with a hearing before a new judge'" and finding that "the *Lucia* Court's reasoning is inapplicable here, and, consequently, Plaintiff's Appointments Clause objection lacks merit" because that ALJ's initial decision issued when he was improperly appointed "was vacated by the Appeals Council on the merits, and he was instructed to reconsider several substantive issues and, if necessary, to obtain new evidence. . . . Therefore, ALJ Wood could not have simply reached 'all the same judgments' on remand"); *Camille B. v. Kijakazi*, No. 2:20CV262, 2021 WL 4205341, at *3 (E.D. Va. Sept. 15, 2021) ("The only decision currently under review by this Court is the ALJ's April 2019 merits-based decision, which was made after the ALJ's appointment was ratified by the Acting Commissioner of the SSA. The ALJ was properly appointed during the entire administrative adjudication that this Court is reviewing."); *Govachini*, 2020 WL 5653339, at *1

n.1 ("This case was not remanded back to the Commissioner by this Court until well after [the ALJ's appointment was ratified]. . . . ALJ Leslie Perry-Dowdell was properly appointed during the entirety of the administrative adjudication of this case after the Court had overturned her earlier decision."), *with*, *e.g.*, *Melissa L.R. v. Kijakazi*, No. 1:21-CV-00318(BKS), 2022 WL 3153937, at *2–3 (N.D.N.Y. Aug. 8, 2022) ("Here, because ALJ Soltes had already heard Plaintiff's case in 2018, and 'cannot be expected to consider the matter as though he had not adjudicated it before,' and because the 'appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official,' the Appointments Clause violation in 2018 was not remedied.") (quoting *Lucia*, 138 S. Ct. at 2055); *Evanitus*, 2021 WL 5494282, at *4 (concluding that the case should be remanded for rehearing in front of a different ALJ other than the one who conducted the first hearing at a time when he was improperly appointed because, *inter alia*, "the Supreme Court in *Lucia* specifically ordered the case remanded to a different ALJ than the ALJ who originally heard the plaintiff's case, regardless of whether the ALJ 'ha[d] by now received (or receives sometime in the future) a constitutional appointment'") (quoting *Lucia*, 138 S. Ct. at 2055); *James R. v. Comm'r of Soc. Sec.*, No. C20-5632-SKV, 2021 WL 4520560, at *7 (W.D. Wash. Oct. 4, 2021) (finding that the Commissioner's position that the ALJ's subsequent ratification of appointment prior to the second hearing "remedied any constitutional defect in the first decision . . . . is in tension with the *Lucia*'s instruction that an Appointments Clause violation should be remedied by a new hearing and "another ALJ . . . must hold the new hearing" and that, "irrespective of her appointment status at the time of the 2019 hearing, ALJ Dantonio's participation in Plaintiff's administrative case continued — rather than cured — the constitutional violation attendant to the first decision") (citing *Lucia*, 138 S.Ct. at 2055); *Welch*, 2021 WL 1884062, at *5 ("Under these

circumstances, ALJ Hartranft violated Plaintiff's constitutional rights twice: first, by ruling on Plaintiff's claim in 2017 without having been properly appointed; and second, by refusing to reassign Plaintiff's claim to a different ALJ after the case was remanded. The facts that ALJ Hartranft was subsequently properly appointed, and that his 2017 decision was subsequently vacated, have no impact on this conclusion, because the damage had already been done when ALJ Hartranft improperly considered and ruled on Plaintiff's claim.").

After considering the arguments of the parties and the relevant caselaw, the Court is persuaded by the latter line of cases holding that a rehearing by the same ALJ—even if that ALJ had by that time been constitutionally appointed—does not cure the Appointments Clause defect present in the initial hearing conducted by or hearing decision issued by that same ALJ while improperly appointed.

> *Lucia* identifies two prerequisites to remedying an "adjudication tainted with an appointments violation." 138 S. Ct. at 2055. First, a claimant must receive a "new hearing before a properly appointed official." *Id*. (cleaned up). Second, "that official" cannot be the same ALJ, "even if he has by now received (or receives sometime in the future) a constitutional appointment." *Id*. "To cure the constitutional error, another ALJ . . . must hold the new hearing" to which a claimant is entitled. *Id*. Here, only the first condition was met.

*James R*., 2021 WL 4520560, at *6−7 (finding further that "'to cure the constitutional error,' the Commissioner's final decision must be reversed and remanded, and 'another ALJ ... must hold the new hearing'") (quoting *Lucia*, 138 S.Ct. at 2055); *accord* SSR 19-1p (providing that the remedy for violating the Appointments Clause is "a new and independent review of the claims file" by the Appeals Council "and either remand [of] the case to an ALJ other than the ALJ who issued the decision under review, or issue its own new decision about the claim covering the period before the date of the ALJ's decision"). Moreover, as a district court in this circuit has pointed out,

12

> Nothing in the text of *Lucia* suggests that its holding is inapplicable to cases involving ALJs who are properly appointed midway through an action to which they are assigned to preside. In fact, the remedy afforded in *Lucia* – rehearing before a new ALJ – suggests that if an improperly appointed ALJ presides over an SSA claimant's hearing, an Appointments Clause violation has occurred, regardless of whether the ALJ is properly appointed before issuing a final written decision.

*Denicola*, 2021 WL 735853, at *5 (M.D. Pa. Feb. 25, 2021); *see also Evanitus*, 2021 WL 5494282, at *4 (same); *Sallie M. v. Comm'r of Soc. Sec*., No. 3:21-CV-5857-DWC, 2022 WL 3210637, at *5 (W.D. Wash. Aug. 9, 2022) (rejecting the Acting Commissioner's argument that neither *Carr* nor *Lucia* "suggests that an Appointments Clause challenge may survive longer than the decision rendered by the improperly appointed ALJ" because that argument "conflicts with the Supreme Court's holding that claimants need not 'exhaust certain issues in administrative proceedings' and those who raise an Appointments Clause challenge 'for the first time in federal court are not untimely in doing so'") (citing *Carr*, 141 S. Ct. at 1362); *Bobbie J. v. Comm'r of Soc. Sec. Admin*., No. 3:20-CV-027, 2022 WL 952957, at *4 (S.D. Ohio Mar. 30, 2022) ("Contrary to the Commissioner's contentions, the undersigned does not find the link to the vacated judgment sufficient to distinguish the violation and remedy identified in *Lucia*. . . . The fact that ALJ Kenyon's 2016 decision was vacated and is legally void does not change the fact that he had already both heard and issued an initial decision on the merits in Plaintiff's case."). In the present case, as set forth above, it is undisputed that the ALJ was unconstitutionally appointed at the time he conducted the first hearing on January 16, 2018, and when he issued the first decision on March 20, 2018. Although that ALJ later was properly appointed on July 16, 2018—and therefore was constitutionally appointed by the time he conducted the second hearing on June 28, 2019, and when he issued the second decision on August 22, 2019—this Court cannot conclude that the ALJ's subsequent proper appointment remedied the constitutional defect that infected his earlier adjudication. Regardless of the status

of the ALJ's appointment at the time of the second hearing and second decision, his

"participation in Plaintiff's administrative case continued – rather than cured – the constitutional

violation attendant to the first hearing" and the first decision. *Elissa K. v. Comm'r of Soc. Sec.*,

No. C20-5956-SKV, 2021 WL 4452849, at *6–7 (W.D. Wash. Sept. 29, 2021); *see also Daniell*

*v. Kijakazi*, No. 1:21-CV-00301-AKK, 2022 WL 1670087, at *1–2 (N.D. Ala. May 25, 2022)

("In other words, in this case, although the then-Acting Commissioner ratified the ALJ's

appointment between the first adjudication and the second, the 'damage had already been done'

when the ALJ resolved it in the first instance despite her unconstitutional appointment.")

(citations omitted). Accordingly, this Court concludes that "to cure the constitutional error," the

Acting Commissioner's final decision must be reversed and remanded, and "another ALJ . . .

must hold the new hearing." *Lucia*, 138 S.Ct. at 2055.[4]

### III.

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS**

the matter for a new hearing before a different, constitutionally appointed, Administrative Law

Judge.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 26, 2022                          *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE

---

[4]Because the Court remands the action on this basis, the Court declines to address Plaintiff's
merits-based challenges to the ALJ's second decision.